**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
(WHITE PLAINS)

_____

| | | |
|---|---|---|
| SPIEGEL, et. al. | : | **CIVIL ACTION** |
| | : | |
| Plaintiffs | : | Docket No. 7:16-cv-03680(CS) |
| v. | : | |
| | : | |
| PARADISE, et al. | : | |
| | : | |
| Defendants | : | |

_____

| | | |
|---|---|---|
| DONALD SCHREIBER, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| STEVEN JAY SPIEGEL, | : | |
| TOPICAL BIOMEDICS, INC. a/k/a | : | |
| TOPRICIN, | : | |
| | : | |
| Defendants. | : | |

_____

**VERIFIED COMPLAINT**

The Plaintiff, Donald Schreiber, by and through his counsel, Ayesha Hamilton, Esq. of the Hamilton Law Firm, P.C., raises the following Complaint against the Plaintiffs and Defendants

The Parties

1.      The Plaintiff, Donald Schreiber, is an individual residing at 315 Newtown Turnpike., Weston, CT.  He was engaged as a consultant on May 1, 2017, then became CFO and then CEO for the Defendants until he was terminated on September 13, 2019.

2.      The Defendant, Topical Biomedics, Inc., also known as Topricin (collectively known as "TBI") maintains its principal place of business at 6565 Springbrook Avenue, Rhinebeck, Dutchess County, New York.

3.      The Defendant, Steven Jay Spiegel, maintains a principal place of business at TBI located at 6565 Springbrook Avenue, Rhinebeck, Dutchess County, New York.  Mr. Spiegel also maintains a business address at 148 North Main Street, Florida, Orange County, New York.

4.      TBI makes Topricin Pain Relief Cream, Topricin Fibro Cream, and other natural topical pain relief medicines.

5.      The Plaintiff worked for the Defendants as the Chief Financial Officer (CFO) from February 2018 through September 14, 2018 pursuant to a consulting agreement.

6.      The Plaintiff then worked for the Defendants as the interim Chief Executive Officer (CEO) from September 14, 2018 through September 13, 2019.

7.      The Plaintiff was appointed to serve as interim CEO by a Mediated Agreement of Settlement ("Settlement Agreement")  in the underlying case bearing the caption Spiegel et. al. v. Paradise et. al., Index No. 7:16-cv-03680 and filed in 2015.

8.      This action was filed in the U.S. District Court for the Southern District of New York in 2015.

9.      The case was mediated and a Settlement Agreement was executed by the parties and the Board of Directors of TBI on or about September 14, 2018.

10.      The case was closed by this Court's Order dated September 24, 2018.

<u>Jurisdiction</u>

11.      Jurisdiction of this dispute is properly laid in the U.S. District Court for the Southern District of New York based upon the complete diversity of the parties named herein.

12.      As set forth in paragraphs 7-10 above, this Court also retains jurisdiction over this matter by the terms of the Settlement Agreement, paragraph 9, which provides that "The Court shall retain jurisdiction to enforce the terms of this Agreement" where the "the processes for corporate governance of the Company are not carried out as the board has agreed to herein."

13.      This action arises out of the breach of the Settlement Agreement dated September 14, 2018. (See Mediated Agreement of Settlement attached as **Exhibit A**)

14.      Further, the amount in dispute exceeds $300,000.

<u>Facts Common to All Counts</u>

15.      Mr. Schreiber began serving in the role of interim CEO on or about September 14, 2018.

16.      Mr. Schreiber received his last paycheck on September 13, 2019 but not clear notice of termination.

2

17.     Despite already serving in the role of CEO from September 14, 2018, Mr. Schreiber signed an employment agreement on April 22, 2019 which was effective on March 1, 2019.

18.     The letter confirmed the employment offer for the position of Chief Executive Officer. (See Offer of Employment letter ("Offer Letter") attached as **Exhibit B**)

<u>The Mediated Settlement Agreement</u>

19.     Mr. Spiegel filed a shareholders' derivative suit against Mr. Paradise, the founder and owner of TBI, on May 17, 2015.

20.     Mr. Spiegel filed suit derivatively for TBI's shareholders and individually as a shareholder himself.

21.     On September 9, 2016, the matter was referred to mediation  by Court Order.

22.     Mediation sessions began in October 2016 and the Court was notified that a settlement had been reached on February 8, 2017.

23.     Additional mediation sessions took place between February 2017 and September 14, 2018, when the Settlement Agreement was signed by the parties and members of the TBI Board.

24.     On September 24, 2018, the Court entered an order dismissing the case as per the Settlement Agreement but directing the parties to act with haste in fulfilling the terms of the Settlement Agreement.

25.     The Settlement Agreement provided that both Mr. Spiegel and Mr. Paradise would resign from their roles as co-CEOs. (See Paragraph 2(a) of the Settlement Agreement)

26.     The Settlement Agreement specifically provided for "cessation of Officer's Operational Functions" as being a key element of the settlement terms.  (Settlement Agreement, para. 2)

27.     Paragraph 2(d) of the Settlement Agreement provides "Upon the resignation of Lou and Steve as co-CEO, the CFO Don Schreiber ("Don") shall immediately serve as CEO, on an interim basis, until the board interviews and selects a permanent candidate to serve as CEO.  Along with interviewing outside candidates for the CEO position, the board shall also interview Don for CEO status on a non-interim basis.  Don will be given appropriate and fair consideration to serve as the CEO on a non-interim basis.  Consideration will be given to his effectiveness as CFO, his background, and his vision for moving the company forward."

28.     Mr. Schreiber officially accepted the role of interim CEO on September 14, 2018.

29.     On or about March 11, 2019, Mr. Schreiber was provided with a letter titled "Offer of Employment as Chief Executive Officer." (See Exhibit B)

30.     Mr. Schreiber had been serving in that role officially since September 14, 2018, but unofficially since March 2018.

31.     In March 2018, the mediator had requested both Mr. Spiegel and Mr. Paradise to cease their involvement with company operations, and accordingly, Mr. Schreiber had been serving as TBI's defacto CEO since then.

32.     A key theme in the settlement negotiations was that neither Mr. Spiegel nor Mr. Paradise continue to serve as CEOs for the company and resign all of their other positions as well.  Mr. Spiegel was required to resign as CEO and Treasurer, roles that he has now regained.

33.     Also a key theme in the settlement negotiations was that Mr. Schreiber serve as interim CEO with a strong recommendation that the Board consider him to serve as the permanent CEO.

34.     The Offer Letter was signed by Dennis Barnett, the Chairman of the Board of TBI.

35.     The Offer Letter did not provide for any change in the scope of Mr. Schreiber's job duties and responsibilities.

36.     The Offer Letter provided the "appropriate and fair consideration" as required by paragraph 2(d) of the Settlement Agreement.

37.     Specifically, the Offer Letter changed Mr. Schreiber's compensation from $150,000 to $225,000 per year for his services as CEO.  (See paragraph 3, Offer Letter)

38.     Mr. Schreiber served as CEO from September 14, 2018 until September 13, 2019 even though the Offer Letter sets the start date as March 1, 2019.  Mr. Schreiber did not receive the CEO pay until March 1, 2019.

39.     The Offer Letter provides for "additional compensation" based upon 2018 sales. (See paragraph 4(a), Offer Letter)

40.      The Offer Letter provides for payment of "incentive stock."

41.     Paragraph 4(b) of the Offer Letter (effective March 1, 2019) provides

        "[T]he board, through its compensation committee, will endeavor in good faith to negotiate mutually agreeable terms with you concerning the amount, the means, and terms and conditions of a proposed grant of incentive stock (a "Stock Grant") to you.  If the parties are unable to reach a mutual agreement within 9 months from the date hereof [March 1,

2019], either party may, in its discretion, elect to discontinue negotiations by notifying the other at which time the Company agrees to pay you within 30 days of such notification, and you agree to accept, the sum of $25,000 in full and final settlement and unconditional release of any and all claims you have or may have, whether known or unknown, matured [or] not yet matured, against the Company or its officers, directors to shareholders to be issued, granted, transferred or received any shares of capital stock of the Company stock any other form equity or ownership in the Company, whether or not such claim or claims arise out of or based upon any any actual or implied promise or representation, past or future performance of services, course of dealing, detrimental reliance, promissory estoppel, fraud in the inducement, claim for unpaid wages, or any other theory grounded in law or equity."

42.     Paragraph 5 of the Offer Letter outlined the benefits which would also form a part of Mr. Schreiber's compensation package as CEO.

43.     Paragraph 7 titled "Termination and Severance" provides that where the company terminates employment without good cause after the first six months of employment, the company would pay a severance of six months of base salary in effect as of the date of termination.

44.     Paragraph 7 (a)-(j) define conditions of termination for good cause which would relieve the company from its obligations to pay severance.

45.     Another paragraph 7 titled "Governing law/Disputes" purports to be an arbitration clause.

46.     This arbitration clause is invalid and cannot supercede the terms of the Settlement Agreement wherein the U.S. District Court for the Southern District of New York retains jurisdiction over this matter.

47.     Since Mr. Schrieber was appointed to his duties as CEO on September 14, 2018, pursuant to the terms of the Settlement Agreement, it is that Settlement Agreement that controls this matter.

48.     Mr. Schreiber now files this suit as a direct beneficiary of the Settlement Agreement seeking damages against TBI and Spiegel for breach of the terms of the Settlement Agreement.

<u>Ongoing Pattern of Bad Faith</u>

49.     The entire focus of the Settlement Agreement was to remove Mr. Spiegel and Mr. Paradise from their positions as CEO.

50.     The Settlement Agreement also appointed Mr. Schreiber to serve as the interim CEO and further, permitted the Board to appoint him as the permanent CEO.

51.     Consistent with the terms of the Settlement Agreement, Mr. Schreiber accepted his appointment as CEO on September 14, 2018.

52.     However, he has been serving as *defacto* CEO since March 2018 when the Court appointed mediator required both Mr. Spiegel and Mr. Paradise to cease all involvement with the day to day operations of TBI.

53.     During 2018 and for several months in 2019, while Mr. Schreiber served as CEO, TBI experienced record breaking sales.

54.     Mr. Spiegel began his campaign to discredit and remove Mr. Schreiber and to install himself as CEO as soon as the ink was dry on the Settlement Agreement.

55.     The Settlement Agreement provided that the Board would consist of 7 members. (Settlement Agreement, paragraph 3(a)).

56.     At the time of the execution of the Settlement Agreement, the Board was to be comprised of 4 members: Louis Paradise, Steve Spiegel, Dennis Barnett and John Stanton. (Settlement Agreement, para. 3(c))

57.     The remaining vacancies would be filled as follows:

Then CEO, Don Schreiber
2 "independent candidates" to be appointed by the mediator
(Settlement Agreement, paragraph 4 (b)-(c)

58.     The two independent candidates selected by the mediator and appointed to the board are Joseph Mazzarella, Esq. and David Rosenthal.

59.     Currently, and according to TBI's website as of December 5, 2019, the Board comprises of the following individuals:

Dennis Barnett, Board Chair
Joe Mazzarella, Board Member
David Rosenthal, Board Member
John Stanton, Board Member
Steve Spiegel, Board Member (CEO)
Lou Paradise, Board Member/Founder

60.     In its current iteration, the Board is in violation of the Settlement Agreement.

61.     Mr. Mazzarella dnd Mr. Rosenthal were appointed to be board on November 14, 2018.

6

62.     The Settlement Agreement specifically appoints Mr. Paradise as the Chairman of the Regulatory Compliance Committee (paragraph 1(e).

63.     On or about November 12, 2019, Mr. and Mrs. Paradise, the founders of TBI, were denied access to the TBI offices and instructed to cease all further activities with respect to TBI, in further violation of the Settlement Agreement.

<u>Bad Faith with Respect to Mr. Schreiber</u>

64.     The Board, in compliance with the Settlement Agreement, provided Mr. Schreiber with the Offer Letter effective as of March 1, 2019.

65.     However, on March 8, 2019, Mr. Schreiber spoke with Mr. Joseph Mazzarella who told him he was "dead man walking" as far as Mr. Spiegel was concerned and that "Steve holds all the cards" and that he controls the company.

66.     Mr. Schreiber did not understand the context of Mr. Mazzarella's warning since he had delivered TBI's record breaking sales numbers for the 2018.

67.     It was clear to Mr. Schreiber that Mr. Spiegel had been working against him to undermine his ability to fulfill the responsibilities of CEO since September 2018.  For instance, he actively prevented access to financing, delaying access to working capital loan facility that caused irreparable financial harm to the company finances in 2019.

68.     In particular, in February 2019, Mr. Spiegel and the Board passed a Resolution appointing a new CFO, Mark Freiman.

69.     The Board Resolution required that the CFO, Mark Freiman, report directly to the Board rather than the CEO, Mr. Schreiber.

70.     Operationally, Mr. Freiman reported directly to the Board and took his instructions from them rather than Mr. Schreiber, as the CEO.

71.     This was Mr. Spiegel's first official act to violate the terms of the Settlement Agreement.

72.     Realizing that the company was in financial distress and that TBI could not obtain financing without Mr. Schreiber's personal guaranty, Mr. Schreiber was required to sign on to the company debt as a guarantor, thereby allowing TBI to receive the funds it needed to operate.

73.     In exchange for his personal guaranty for TBI's loan from Key Bank (the "Loan") in the amount of $1.2 million, Mr. Schreiber was to receive a payment of $1,400 per month, calculated as 1.5% of the balance on a monthly basis.

74.     These payments ceased in December 2019 while Mr. Schreiber remains a guarantor on the Loan.

75.     Despite requests to remove Mr. Schreiber as a guarantor from the Loan, neither he nor counsel have received any communication from TBI in that regard.

76.     Further, on March 28, 2019, Mr. Schreiber was asked to obtain American Express credit cards in his name for company use and said cards were being used with a balance of approximately $25,000 in operating expenses each month.

77.     Neither TBI, its Board or Mr. Spiegel took any steps to remove Mr. Schreiber's name from the American Express cards until he was forced to cancel those accounts in October 2019 due to the Defendants' lack of response to his demand letters.

78.     It is clear that Mr. Schreiber was lured into serving as CEO because it was clear that TBI, Spiegel and the Board needed his credit worthiness and guaranty to continue its operations.

79.     In fact, Mr. Schreiber's signature is still being used to sign checks for TBI long after his termination from the Company.

<u>Mr. Schreiber's Termination</u>

81.      In July 2019, Mr. Schreiber was informed by the Board that Mr. Spiegel would be taking his position as CEO and that he would remain at TBI in some capacity to be defined by the Board at a later date.  Mr. Spiegel assumed the title of CEO in August 2019.

82.     Mr. Schreiber was not terminated at this time and in fact, continued to fulfill his job responsibilities, representing TBI at meetings and conferences.

83.     This was done with full knowledge of the executive team and TBI's Board.

84.     Mr. Schreiber also continued to receive a paycheck at his CEO salary until September 13, 2019, which such checks stopped without notice or any discussion from anyone at TBI.

85.     Mr. Schreiber continued routine work related communications with TBI employees until September 18, 2019, when his email account was disabled.

86.     TBI asserts that Mr. Schreiber was terminated on July 10, 2019.

87.     Mr. Spiegel sent an email to Mr. Schreiber on August 1, 2019, indicating that he did not have any news about the new position from the Board.

88.     No details of any "new position" were ever provided to Mr. Schreiber.

89.     Mr. Schreiber has never been provided with any information, documents or other indication that his performance was deficient in anyway or that TBI had "good cause" for his termination.

90.     Rather, TBI has continued to use Mr. Schreiber's credit, his good name and his guaranty despite terminating him from his role as CEO in violation of the sum and substance of the Settlement Agreement.

91.     TBI has not right to benefit from Mr. Schreiber's credit, his personal guaranty and his signature after he was terminated from the Company by Mr. Spiegel in bad faith.

<u>The Stock Grant</u>

92.     Paragraph 4(b) of the Offer Letter requires the Board to "endeavor in good faith to negotiate mutually agreeable terms with you concerning the amount, the means, and terms and conditions of a proposed grant of incentive stock (a "Stock Grant") to you.

93.     No one from the Board or its Compensation committee has taken any steps whatsoever to discuss or negotiate "the amount, the means, and terms and conditions" of the Stock Grant.

94.     In the event that the parties are unable to reach a mutual agreement by December 1, 2019 (i.e. 9 months from the date of the offer Letter), the TBI is required to pay Mr. Schreiber the sum of $25,000.

95.     To date, Mr. Schreiber has not received any communication whatsoever regarding the Stock Grant or the $25,000 pay out.

96.     Mr. Spiegel has acted intentionally to orchestrate the Board to reinstate him as the CEO and Treasurer of TBI despite his removal being a central and crucial condition of the Settlement Agreement.

97.     Mr. Spiegel has abused his authority to remove Mr. Schreiber from his Board appointed position as CEO, a key negotiated term of the Settlement Agreement.

98.     Mr. Spiegel, in bad faith and with unclean hands, has refused to honor the terms and conditions of the Settlement Agreement.

99.     Mr. Spiegel, in bad faith and with unclean hands, has refused to honor the terms and conditions of the Offer Letter.

100.    Mr. Spiegel, in bad faith and with unclean hands, has attempted to characterize Mr. Schreiber's removal as CEO as being for "good cause".

101.    Mr. Schreiber has been damaged and continues to suffer damages as a direct and proximate result of Mr. Spiegel and the Board's intentional, willful, and wanton behavior and violation of the terms and spirit of the Settlement Agreement.

102.    Mr. Schreiber has been damaged and continues to suffer damages as a direct and proximate result of Mr. Spiegel and the Board's intentional, willful, and wanton behavior and violation of the terms and spirit of the Offer Letter.

<u>FIRST COUNT</u>
(Breach of the Settlement Agreement)
**Declaratory Judgment**

103.    The Plaintiff reiterates the averments of fact set forth in paragraphs 1 through 102 of the Complaint as though recited herein verbatim and at length.

104.    TBI, its Board and its CEO, Spiegel, have acted in bad faith to thwart the terms, spirit and intent of the Settlement Agreement by removing Mr. Schreiber from his position as CEO without good cause.

105.    TBI, its Board and its CEO, Spiegel, have acted in bad faith to thwart the terms, spirit and intent of the Settlement Agreement by installing Mr. Spiegel as the CEO of TBI.

106.    The central focus of the Settlement Agreement required the removal of Spiegel and Paradise from their positions as co-CEOs and the appointment of Mr. Schreiber to that position.

107.    Mr. Schreiber is a direct beneficiary of the Settlement Agreement and was appointed to that position by the Board at the mediator's recommendation.

108.    Mr. Schreiber served in the position of CEO from September 14, 2018 through September 13, 2019.

109.    Mr. Schreiber was paid at the rate of $150,000 per year from September 14, 2018 through April 22, 2019.

110.    Mr. Schreiber was paid at the rate of $225,000 per year from April 22, 2019 through his termination on September 13, 2019; which payments were made retroactive to March 1, 2019, the effective date of the Offer Letter.

112.    During his term as CEO, Mr. Schreiber was asked by the Board to serve as a personal guarantor on TBI's debt.

113.    During his term as CEO, Mr. Schreiber was asked to obtain American Express credit cards for use by TBI.

114.    TBI and Spiegel needed Mr. Schreiber's good credit and reputation to obtain the credit and finances they needed to continue to operate, including continuing to use his signature to sign payroll checks.

115.    As soon as Mr. Schreiber had obtained this credit and personally guaranteed TBI's debt, Mr. Spiegel began his campaign to remove him from the position of CEO.

116.    TBI, its Board and specifically, Mr. Spiegel have acted in bad faith and with ill intentions to thwart the objectives of the negotiated and mediated Settlement Agreement as described below:

(i)    Actively prevented board approval for necessary short term financing, thereby stopping manufacturing and ceasing promotional activities, directly affecting sales;

(ii)    Actively blocked the approval of a promotional campaign with Fox Media Group which prevented access to a new and viable platform of consumers, thereby blocking sales;

(iii)    Actively worked to undermine Mr. Schreiber and block his plan to the Board to yield $10,000,000 in sales.

These are just a few egregious instances of bad faith by Mr. Spiegel, the very reasons for which the mediator deemed in necessary for him to no longer serve as CEO and Treasurer.

117.    Mr. Schreiber has been and continues to be harmed as a direct and proximate cause of the Defendants' negligent, intentional, willful, wanton and malicious actions.

WHEREFORE, the Plaintiff seeks a declaration of this Court as follows:

(a)    That TBI, its Board and Mr. Spiegel have violated the terms of the Settlement Agreement;

(b)    That the Board is required to remove Mr. Spiegel as CEO of TBI;

(c)    Requiring that the Board reinstate Mr. Schreiber as CEO of TBI;

(d)    Requiring that Mr. Schreiber be fairly compensated for his service as CEO from September 14, 2018 through April 22, 2019 at the rate of $225,000 per year consistent with the Settlement Agreement and Offer Letter;

(e)    Requiring TBI and its Board to immediately remove Mr. Schreiber from any personal obligations and/or indebtedness related to TBI; and

(f)    For such other relief that this Court deems just and equitable under the circumstances.

11

SECOND COUNT
(Breach of Covenant of Good Faith and Fair Dealing
Implied in the Settlement Agreement)

118.    The Plaintiff reiterates the averments of fact set forth in paragraphs 1 through 117 of the Complaint as though recited herein verbatim and at length.

119.    New York law recognizes that the covenant of good faith and fair dealing is implied in all contracts.

120.    The Settlement Agreement between the parties represents a negotiated contract.

121.    The Settlement Agreement contains the implied and express covenant of good faith and fair dealing within its terms.

122.    The express requirement of good faith  and fairness is specifically referenced in paragraph 2(d) relating to Mr. Schreiber's appointment as CEO, both interim and permanent.

123.    The good faith and fairness requirement is also expressly contained in paragraph 9 of the Settlement Agreement permitting that this action may be refiled if the "processes for corporate governance of the Company are not carried out as the board has agreed herewith."

124.    The Defendants have violated the express and implied covenant of good faith and fair dealing by appointing a CFO who reports directly to the Board and not TBI's CEO at the time, Mr. Schreiber.

125.    The Defendants have violated the express and implied covenant of good faith and fair dealing by board member, Joseph Mazzarella threatening Mr. Schreiber that he was "dead man walking" and further informed him that Mr. Spiegel controlled the company in all respects.

126.    The Defendants have violated the express and implied covenant of good faith and fair dealing when they required Mr. Schreiber to use his good name and his credit to personally guaranty TBI's debt and obtain American Express cards for its operating expenses and then removing him from his position as CEO and as a board member.

127.    The Defendants have violated the express and implied covenant of good faith and fair dealing when they removed Mr. Schreiber from his position and claimed to have "good cause" for such removal yet continuing to use his name and signature on payroll checks long after his termination.

128.    The Defendants have violated the express and implied covenant of good faith and fair dealing when they continued to use Mr. Schreiber's credit, his personal guaranty, and his signature for TBI's payroll checks.

129.    The Defendants have violated the express and implied covenant of good faith and fair dealing when they refused to pay Mr. Schreiber the severance payments and Stock Grant promised to him in the Offer Letter, and as required by the Settlement Agreement.

130.    The Defendants have acted intentionally, willfully and wantonly with an express purpose to harm and retaliate against Mr. Schreiber for being appointed as CEO in Mr. Spiegel's place.

131.    Mr. Schreiber has been harmed and continues to suffer economic and non-economic harm as a direct and proximate cause of the Defendants' negligent, intentional, willful and wanton actions against him.

WHEREFORE, the Plaintiff seeks judgment against the Defendants as follows:

(a)    Compensatory damages;
(b)    Consequential damages;
(c)    Pre-judgment and Post-judgment interest;
(d)    Counsel fees and costs of suit; and
(e)    Such other relief that this Court deems just and equitable under the circumstances.

<u>Third Count</u>
(Defamation)

132.    The Plaintiff reiterates the averments of fact set forth in paragraphs 1 through 131 of the Complaint as though recited herein verbatim and at length.

133.    The Plaintiff formally assumed the role of CEO for TBI on September 14, 2018.

134.    However, because the mediator had required the co-CEOs, Spiegel and Paradise to cease all involvement in day to day operations, Mr. Schreiber had been serving in the role of CEO since February 2018.

135.    From February 2018 through September 13, 2019, TBI saw its record setting sales months under Mr. Schreiber's leadership.

136.    Paragraph 7(a)-(j) of the Offer Letter defines specific circumstances which constitute "good cause" for Mr. Schreiber's termination forfeiting his severance benefits.

137.    TBI, its Board and Mr. Speigel have been unable to identify any specific acts by Mr. Schreiber which would constitute "good cause."

138.    Further, Mr. Spiegel's intentional statements to characterize Mr. Schreiber's removal as CEO were made with the specific intent of causing harm to Mr. Schreiber's reputation for his own benefit.

139.    Mr. Spiegel's intentional and malicious statements regarding the alleged "good cause" for Mr. Schreiber's termination were made with the specific purpose of defrauding Mr. Schreiber out of the severance benefits that he was promised in the Offer Letter.

140.    The Defendants, and specifically Mr. Schreiber, have acted in bad faith and with malice to defame Mr. Schreiber and affect his reputation in the industry.

141.    The Defendants' willful and malicious statements have been communicated and published to other consultants and other service providers of the company causing Mr. Schreiber great distress, embarrassment, and harm.

142.    Mr. Schreiber has suffered economic and non-economic damages as a direct and proximate result of the Defendants negligent, intentional, willful and malicious acts.

WHEREFORE, the Plaintiff seeks judgment against the Defendants as follows:

(a)    Compensatory damages;
(b)    Punitive damages;
(c)    Pre-judgment and Post-judgment interest;
(d)    Counsel fees and costs of suit; and
(e)    Such other relief that this Court deems just and equitable under the circumstances.

<u>Fourth Count</u>
(Fraud)

143.    The Plaintiff reiterates that averments of fact set forth in paragraphs 1 through 142 of the Complaint as though recited herein verbatim and at length.

144.    The Defendants' have intentionally misrepresented their intentions to hire Mr. Schreiber as CEO on a permanent long term basis as provided for in the Settlement Agreement by providing him with the Offer Letter.

145.    The Defendants have intentionally lured Mr. Schreiber into the CEO role so that he would use his credit and good name for their benefit, enabling them to obtain a loan and credit with his personal guarantee.

145.    Mr. Schreiber was lured to personally guaranty the TBI debt and obtain American Express cards for TBI under the promise of compensation and severance outlined in the Offer Letter.

146.    After Mr. Schreiber signed on as personal guarantor for the TBI debt and credit cards, Mr. Spiegel and the Board began their campaign to remove him from his position as CEO.

147.    Despite having achieved record breaking sales figures for TBI, Mr. Spiegel and the Board sought to terminate Mr. Schreiber for "good cause".

148.    Mr. Spiegel, TBI and the Board have taken the position that the Offer Letter allows them to terminate Mr. Schreiber for "good cause", thereby causing him to forfeit the severance benefits and Stock Grant provided for in the Offer Letter.

149.    Mr. Spiegel, TBI and its Board have acted intentionally, willfully and maliciously to lure Mr. Schreiber to personally guarantee their debt and obtain credit that they could not otherwise receive.

150.    Mr. Schreiber was lured into personally guaranteeing this debt and obtaining credit in his name by representations from the Board made in the Offer Letter.

151.    Mr. Spiegel, TBI and its Board have acted intentionally, willfully and maliciously to defraud Mr. Schreiber out of the severance and Stock Grant amounts promised to him in the Offer Letter by claiming that he was terminated for good cause when no good cause has been demonstrated despite requests for same.

152.    Mr. Schreiber has been damaged and continues to suffer both economic and non-economic damages as a direct and proximate cause of the Defendants' intentional, willful and malicious actions.

WHEREFORE, the Plaintiff seeks judgment against the Defendants as follows:

(a)    Compensatory damages;
(b)    Punitive damages;
(c)    Pre-judgment and Post-judgment interest;
(d)    Counsel fees and costs of suit; and
(e)    Such other relief that this Court deems just and equitable under the circumstances.

<u>Fifth Count</u>
(Conspiracy to Commit Fraud)

153.    The Plaintiff reiterates that averments of fact set forth in paragraphs 1 through 152 of the Complaint as though recited herein verbatim and at length.

154.    The Defendants have conspired to work together to lure Mr. Schreiber into the CEO role so that he would use his credit and good name for their benefit.

155.    Mr. Schreiber was already serving in the role of CEO since September 14, 2018.

156.    The Offer Letter presented to Mr. Schreiber purported to give him a higher salary as permanent CEO (provided for in the Settlement Agreement), a Stock Grant, and separation benefits.

157.    The only circumstances under which Mr. Schreiber would forfeit those benefits would be for "good cause" shown.

155.    Following his receipt of the Offer Letter, Mr. Schreiber was lured to personally guaranty the TBI debt and obtain American Express cards for TBI under the promise of compensation and severance outlined in the Offer Letter.

156.    After Mr. Schreiber signed on as personal guarantor for the TBI debt and credit cards, Mr. Spiegel and the Board began their campaign to remove him from his position as CEO.

157.    Despite having achieved record breaking sales figures for TBI, Mr. Spiegel sought to terminate Mr. Schreiber for "good cause".

158.    Mr. Spiegel, TBI and the Board have taken the position that the Offer Letter allows them to terminate Mr. Schreiber for "good cause", thereby causing him to forfeit the severance benefits and Stock Grant provided for in the Offer Letter.

159.    Mr. Spiegel, TBI and its Board have acted intentionally, willfully and maliciously to lure Mr. Schreiber to personally guarantee their debt and obtain credit that they could not otherwise receive.

160.    Mr. Schreiber was lured into personally guaranteeing this debt and obtaining credit in his name by representations from the Board made in the Offer Letter.

161.    Mr. Spiegel, TBI and its Board have acted intentionally, willfully and maliciously to defraud Mr. Schreiber out of the severance and Stock Grant amounts promised to him in the Offer Letter by claiming that he was terminated for good cause when no good cause has been demonstrated despite requests for same.

162.    Mr. Schreiber has been damaged and continues to suffer both economic and non-economic damages as a direct and proximate cause of the Defendants' intentional, willful and malicious actions.

WHEREFORE, the Plaintiff seeks judgment against the Defendants as follows:

(a)     Compensatory damages;
(b)     Punitive damages;
(c)     Pre-judgment and Post-judgment interest;
(d)     Counsel fees and costs of suit; and
(e)     Such other relief that this Court deems just and equitable under the circumstances.

_____
Ayesha Hamilton, Esq.
Hamilton Law Firm PC
Counsel for the Plaintiff
13 Roszel Road, Suite C 226
Princeton, New Jersey 08540
Tel (609) 945-7310
Cel. (215) 738-0222

Dated:  December 12, 2019

<u>Designation of Trial Counsel</u>

Ayesha Hamilton, Esq. of the Hamilton Law Firm PC is hereby designated as trial counsel for the Plaintiff, Don Schreiber.

_____
Ayesha Hamilton, Esq.
Hamilton Law Firm PC
Counsel for the Plaintiff
13 Roszel Road, Suite C226
Princeton, New Jersey 08540
Tel. (609) 945-7310
ahamilton@ahlawpc.com

Dated: December 12, 2019

17

<u>Certification of No Other Pending Actions</u>

I hereby certify that there are no related actions currently pending before this Court or any other Court.

This matter is being brought under the <u>Docket No. 17:16:-cv-03680-CS</u> because it arises from a breach of the Mediated Agreement of Settlement entered into between the parties on September 14, 2018, and confirmed by this Court via Order dated September 24, 2018.  Paragraph 9 of the Mediated Agreement of Settlement retains jurisdiction in this Court over any issues relating to the enforcement of the terms of the Agreement or the violation thereof.

_____
Ayesha Hamilton, Esq.
Hamilton Law Firm PC
Counsel for the Plaintiff
13 Roszel Road, Suite C226
Princeton, New Jersey 08540
Tel. (609) 945-7310
ahamilton@ahlawpc.com

Dated: December 12, 2019

18

<u>VERIFICATION</u>

Don Schreiber, being of age and sound mind, does hereby certify and say:

1.      I am the Plaintiff in this action.

2.      I verify that the statements contained herein are true to the best of my knowledge.

3.      I am aware that if anything contained herein is willfully false, I am subject to punishment under the penalties of perjury.

_____
Don Schreiber, Plaintiff

Dated: December _10_, 2019

19